UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| GLENDA A. SMITH, | : | Case No. 1:13-cv-915 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| CITY OF WYOMING, et al., | : | |
| | : | |
| Defendants. | : | |

**ORDER:**

1) **GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 56); and**

2) **DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (Doc. 58).**

This civil action is before the Court on the parties' cross motions for summary judgment (Docs. 56, 58), their respective Responses (Docs. 68, 70), and Replies (Docs. 74, 76).

**I. BACKGROUND**

This *pro se* Section 1983 action arises out of a number of encounters between Defendant officers of the Wyoming Police Department and Plaintiff Glenda Smith that took place between March 9, 2012, and December 7, 2013. On each occasion, officers responded to Plaintiff's residence following a call to 9-1-1 or after being otherwise notified of suspicious activity. Over the course of these interactions, Plaintiff was arrested only once, on April 2, 2013, following a report that Plaintiff's

ten-year- old daughter was at home with a possibly intoxicated mother and an unknown male who was making the child uncomfortable. The April 2 encounter was the only encounter in which the police had physical contact with Plaintiff, when an officer tried to take her hand, handcuffed her, and placed her in a squad car.

In her fourteen-count Amended Complaint, Plaintiff alleges that throughout the course of these encounters, Defendants engaged in conduct that violated her constitutional rights under the Fourth and Fourteenth Amendments (Doc. 27). Plaintiff specifically asserts claims under 42 U.S.C. § 1983 for Illegal Entry, Seizure, Excessive Force, Substantive Due Process, Procedural Due Process, Retaliatory Prosecution, Abuse of Process, and Interference with Family Relationships. (*Id.*). Plaintiff further alleges state law claims for Assault and Battery, Intentional Infliction of Emotional Distress, Defamation, False Imprisonment, and False Arrest. (*Id.*). Finally, she alleges that the City of Wyoming is liable for failing to adequately train and supervise its officers. (*Id.*).

Defendants move for summary judgment under the theories that their actions did not deprive Plaintiff of any constitutional right, that they are entitled to qualified immunity, there is no respondeat superior liability and no evidence of deliberate indifference by the City of Wyoming, and Defendants are entitled to sovereign immunity with respect to Plaintiff's state law claims (Doc. 56). Plaintiff likewise moves for summary judgment, contending that Defendants' warrantless entries into her home lacked probable cause and that Defendants' actions amounted to

harassment and culminated in assault and battery, false arrest, intentional infliction of emotional distress, and defamation (Doc. 58). The parties have fully briefed the issues.

## II. UNDISPUTED FACTS[1]

1. Following Plaintiff's February 2012 divorce from Joseph Johnston, the Wyoming Police were contacted on six separate occasions to respond to reports of, among other things, abuse and neglect of Plaintiff's minor children, Jasmine and Tiffany.

2. On the morning of March 9, 2012, Plaintiff called a neighbor, Nadine Riley, and asked Riley to give her a ride to her daughter Jasmine's school to drop off lunch.

3. Riley noted that Plaintiff stumbled when she walked and that she had a strong odor of alcohol on her person.

4. Riley took Plaintiff to the school to drop off money. Riley, and not Plaintiff, entered the building. Inside, Riley reported to a school official that Plaintiff appeared to be intoxicated and offered to pick up Plaintiff's children after school.

5. The school principal asked Jasmine whether Plaintiff had a drinking problem, and Jasmine responded that Plaintiff did.

6. Children Services reported to the police that Plaintiff was possibly intoxicated at home and unable to care for her children. Wyoming Sergeant Michael World and Officer Krummen were dispatched to check on the residence.

---

[1] The Court arrived at this list after a review of the parties' submissions (Docs. 56-5, 67) as well as the undisputed deposition testimony and affidavits filed.

3

7. Plaintiff's friend, Renee Littles, let the officers enter the residence.

8. World noticed Plaintiff initially trying to hide behind a piece of furniture. He further noted she had bloodshot eyes and slurred speech.

9. The officers determined that it would be appropriate for the children to spend the night with their father, Joseph Johnston.

10. On November 13, 2012, Johnston called the police to complain that he was scheduled for visitation time with his daughter Tiffany, but that she was not at Plaintiff's residence and Plaintiff was not responding to his phone calls.

11. Sergeant Berigan and Officer Krunman responded to Plaintiff's residence where Plaintiff's daughter, Jasmine, reported that Tiffany was not home and that Plaintiff had taken her to a counseling appointment.

12. Sergeant Berigan advised Johnston that Johnston should contact his attorney should he wish to resolve the custody dispute with Plaintiff.

13. Neither officer entered Plaintiff's residence or had any contact with Plaintiff on November 13, 2012.

14. On April 2, 2013, Johnston made a 9-1-1 call after his daughter Tiffany had called him indicating she was frightened by an unknown male in Plaintiff's residence.

15. Officer Murphy and Sergeant World were dispatched to Plaintiff's residence, where a visibly upset Tiffany consented to their entry inside.

16. Fearing for Plaintiff's safety, the officers called out Plaintiff's name in order to get her attention.

17. Tiffany directed the officers to an upstairs bedroom.
18. The officers went upstairs and approached the bedroom door, knocked and announced their presence.
19. When Plaintiff opened the door, she was questioned by Sergeant World and Officer Murphy.
20. The officers requested that Plaintiff exit the room and identify the unknown male known to be in the room.
21. Plaintiff questioned the officers.
22. An officer warned Plaintiff that if she did not comply with their requests, she would be arrested.
23. When Officer Murphy reached for Plaintiff's hand in order to escort her from the room, she pulled away from him, out of his grasp.
24. Sergeant World placed Plaintiff under arrest for obstructing official business.
25. Plaintiff was struggling to walk, had slurred speech, and told World that he had beautiful eyes.
26. Plaintiff's male friend, Robert Chinn, proffered identification and left the residence without incident.
27. The charge against Plaintiff for obstructing official business was ultimately dismissed.
28. On May 2, 2013, Plaintiff's daughter Tiffany called 9-1-1 stating that Plaintiff had threatened to kill her.

28. Sergeant Ballinger and Officer McGillis responded to Plaintiff's residence where Tiffany allowed them inside.

29. Plaintiff was asleep upstairs.  Her daughter Jasmine woke her to tell her the officers wanted to speak with Plaintiff.

30. Plaintiff initially denied making the threat, but, upon confirmation by Jasmine, stated that in the heat of argument she may have done so.

31. The officers mediated the situation between Plaintiff and her daughters and left without further incident.

32. On December 6, 2013, Johnston took Tiffany to the police department where he showed Officer Riggs a contusion on Tiffany's head.

33. Tiffany reported to Riggs that Plaintiff had struck her several times on the head and face.

34. The next day, Officer Riggs visited Plaintiff's residence, knocked on the door, and spoke with Plaintiff and Jasmine about Tiffany's account of the altercation the previous day.

35. Plaintiff denied striking Tiffany, and Tiffany later attributed her injury to a tussle with Jasmine.

36. Plaintiff alleges that when the conversation was over she attempted to shut the door and Riggs put his foot in the doorframe to prevent the door from shutting.  Riggs denies having done so.

### III. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

### III. ANALYSIS

#### A. Plaintiff's Fourth Amendment Claims

The Fourth Amendment protects the rights of "people to be secure in their persons, houses, papers, and effects" from unreasonable searches and seizures. U.S. CONST. amend. IV. A person's home is the one place most resolutely protected under the Fourth Amendment; this arises from a view, as old as the common law, that '[t]he house of everyone is to him as his castle and fortress, as well for his defence against injury and violence, as for his repose." *Wilson v. Layne*, 526 U.S. 603, 609-10 (1999) (quoting

7

*Semayne's Case*, (1604) 77 Eng. Rep: 194, 195 (K.B.)); 4 WILLIAM BLACKSTONE, COMMENTARIES, *223 ("the law of England has so particular and tender a regard to the immunity of a man's house, that it stiles it his castle, and will never suffer it to be violated with impunity").

A home stands as the one place, and perhaps the final place, to where a person can retreat and seclude themselves from the rest of the world, free from intrusion, interference or surveillance, by the government or by others. *Boyd v. United States,* 116 U.S. 630 (1886) (speaking of the sanctity of a man's home and the privacies of life); *Katz v. United States*, 389 U.S. 347 (1967) ("a man's home is, for most purposes, a place where he expects privacy"). These longstanding principles mean that police entries into private homes must generally be conducted pursuant to a warrant in order to be reasonable under the Fourth Amendment. *Donovan v. Dewey*, 452 U.S. 594, 598 (1981).

A review of Plaintiff's filings in this matter shows that she was shocked and upset by Defendant Officers' entries into her home. Clearly anyone would find the surprising presence of police in their home unsettling.

However, unbeknownst to Plaintiff at the time, the record shows officers entered on March 9, 2012 after receiving a call from Children's Services, and upon being allowed inside by Plaintiff's friend, Renee Littles. Officers entered April 2, 2013 in response to a 9-1-1 call regarding an unknown male in the house after Plaintiff's daughter consented to their entry inside. Officers entered again, on May 2, 2013, in response to Plaintiff's daughter's 9-1-1 phone call, and again, Plaintiff's daughter allowed them inside.

8

Although a home is a person's "castle," police may enter under exigent circumstances or when they are invited inside. *Steagold v. United States*, 451 U.S. 204 (1981). <u>A third-party may consent to entry, as well as a minor child</u>. *Davis v. United States*, 327 F.2d 301 (9th Cir. 1964), *State v. Kilgore*, No. 18093, 2000 Ohio App. LEXIS 1144, *10)(Ohio Ct. App., March 24, 2000).

There is no dispute that, from the officers' viewpoint at each of these encounters, there were exigent circumstances—either a 9-1-1 call reporting potential threats to Plaintiff's children or a call from Children's Services. Moreover, the officers were justified at each entry because of consent given either by Plaintiff's friend or Plaintiff's daughter.

Plaintiff proffers no evidence to the contrary, and the fact that her daughter does not remember allowing the police inside creates no genuine dispute with the fact that the officers <u>do</u> report gaining consent. Accordingly, the Court finds no basis for Plaintiff's Fourth Amendment claims regarding the various entries by the Defendant Officers.

### B. Plaintiff's Claims for Excessive Force and Illegal Seizure

In evaluating a claim for Excessive Force, the Court must consider what a reasonable officer would do in the circumstances of the encounter. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Plaintiff's claim is that Officers Murphy and World used excessive force when Murphy tried to grab her, when World handcuffed her, and when

9

World grabbed her arm to guide her into his patrol car. She proffers "Exhibit Q" as photographic evidence of bruises (Doc. 58-3).[2]

The record shows that the officers were responding to a complaint of an unknown man in Plaintiff's house. A reasonable officer in such a situation could believe such a person constituted a threat to Plaintiff and her family. When the officers approached Plaintiff's door, they reasonably desired to separate Plaintiff from the unknown person and then to determine who he was. Plaintiff recoiled from Murphy's grasp after being warned she needed to cooperate or face arrest. Murphy's grasp was obviously light enough for Plaintiff to escape it. His actions were not heavy-handed.

Plaintiff made no complaint about her handcuffs allegedly being too tight at the time of her arrest. In order for a handcuffing claim to survive summary judgment, a plaintiff must offer sufficient evidence to create a genuine issue of material fact that he or she complained the handcuffs were too tight. *Morrison v. Bd. Of Trs. Of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009). Plaintiff has not done so.

Having reviewed this matter, the Court finds that the record belies Plaintiff's claims that she was subjected to anything more than *de minimis* force. Similarly, the record supports a finding the Sergeant World reasonably believed Plaintiff was obstructing official business. *Lyons v. City of Xenia,* 417 F.3d 565, 575 (6th Cir. 2005). Her arrest was therefore justified. No reasonable jury would find otherwise.

---

[2] Such exhibit is unclear at best.

For these reasons the Court finds summary judgment appropriate as to Plaintiff's claims for Excessive Force and Illegal Seizure.

### C. Plaintiff's Claim for Interference with Family Relationships

The Sixth Circuit has not delineated the elements of a claim for interfering with family relationships. *Walsh v. Erie County Dep't of Job & Family Servs.*, 240 F. Supp. 2d 731, 756 (N.D. Ohio 2003). The Northern District of Ohio, however, has specifically held that police action that affects the parental relationship only incidentally is not sufficient to establish a violation of an identified liberty interest. *Id.*

Here, Plaintiff alleges that Defendants: (1) called Joseph Johnston to come pick up their two children to spend a single night with their Father; (2) inquired about Johnston's visitation rights; (3) made rude comments about Plaintiff to her daughters; and (4) contacted Children's Services with respect to Plaintiff and her children. Such allegations are only incidental to her parental relationship with her daughters. The record does not show that any of the Defendants acted in such a way as to diminish or deprive Plaintiff of her familial relationship with her children. Accordingly, Defendants are entitled to summary judgment as to such claim.

### D. Plaintiff's Claims for Substantive and Procedural Due Process Violations

In *Graham v. Connor,* the Supreme Court held that "*all* claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth

Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." 490 U.S. at 395.  The Court therefore finds Plaintiff's claims in this matter appropriately addressed above under a Fourth Amendment analysis, as opposed to a Fourteenth Amendment substantive or procedural due process framework.  As such, her claims pursuant to the Fourteenth Amendment are properly dismissed.  *See* §III.A *supra*.

### E.  Defendants Are Entitled to Qualified Immunity

Because Plaintiff cannot establish that any of the Defendants violated a clearly-established constitutional right of which a reasonable person would have known, the Defendants are entitled to qualified immunity.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Officers are justified in "knocking and talking," making a warrantless entry into a house with consent or under exigent circumstances, and making a minimal intrusion by preventing a door from closing in the course of an investigatory conversation.   Officers are further entitled to arrest a suspect with probable cause to do so, and officers are entitled to use *de minimis* force in handcuffing a suspect.  These principles are clearly established, and none of the Defendants in the various encounters with Plaintiff violated her constitutional rights.

### F.  Municipal Liability

To prevail on a claim pursuant to Section 1983, a plaintiff must prove the existence of a municipal policy or custom directly linked to an alleged constitutional violation.  *Monell v. New York City Dept. of Social Serv.*, 436 U.S. 658, 691 (1978).  Plaintiff has not proffered evidence of any policy that caused a constitutional violation.

Nor can she assert a claim for failure to train, supervise, investigate, or discipline, because the Defendant officers simply did not violate her rights. *May v. Franklin County Commissioners*, 437 F.3d 579, 586 (6th Cir. 2006). Defendant City of Wyoming is entitled to summary judgment as to Plaintiff's claims against it.

### G. Plaintiff's State Tort Claims

The Ohio Revised Code provides sovereign immunity for city officials acting in good faith and within the scope of their employment. Pursuant to O.R.C. § 2744.03, employees engaged in government functions are immune from tort liability unless they act "with malicious purpose and bad faith, or in a wanton and reckless manner." Here, the Court has already found that no officer used excessive force or otherwise acted unreasonably. As such, Defendants are immune from tort liability for Plaintiff's claims of false arrest and imprisonment, intentional infliction of emotional distress, assault and battery, and defamation.

### IV. CONCLUSION

Having reviewed this matter the Court finds no genuine issue as to any material fact and concludes that Defendants are entitled to judgment as a matter of law. Accordingly:

1) The Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. 56) ; and

2) The Court **DENIES** Plaintiff's Motion for Summary Judgment (Doc. 58).

The Clerk shall enter judgment accordingly, whereupon this case is **CLOSED** in this Court.

**IT IS SO ORDERED**.

Date: 3/12/15                          *s/ Timothy S. Black*
                                         Timothy S. Black
                                         United States District Judge