UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

GLENDA A. SMITH,　　　　　　　　　　　　Case No. 1:13-cv-915

　　　　Plaintiff,　　　　　　　　　　　　　Judge Timothy S. Black

vs.

CITY OF WYOMING, *et al.,*

　　　　Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION IN LIMINE (Doc. 99)**

　　　　This civil action is before the court on Plaintiff's motion *in limine* (Doc. 99) and the parties' responsive memoranda (Docs. 101, 102).

### I.　　BACKGROUND FACTS

　　　　The Sixth Circuit held that there are two triable incidents in this case: (1) the entry of Plaintiff's house by Defendants World and Krummen on March 9, 2012, alleged to be a violation of the Fourth Amendment; and (2) the arrest of Plaintiff by Defendant World on April 2, 2013, alleged to be without probable cause and a violation of the Fourth and Fourteenth Amendments.  *Smith v. City of Wyoming*, 821 F.3d 697 (6th Cir. 2016).

　　　　Plaintiff argues that the only witnesses to the March 9, 2012 incident are the two officers, Plaintiff, and her guest, Ms. Littles.  Plaintiff argues that only these witnesses can give relevant testimony as to whether the entry by the officer was consented to or not.  With respect to the April 2, 2013 incident, Plaintiff argues that the only witnesses are Plaintiff, Officer World, and Mr. Chinn.  Accordingly, Plaintiff argues that her former husband (Joseph Johnston), her minor children (Jasmine and Tiffany), and all other

people listed as witnesses have no relevant testimony on the claims or defenses and should be excluded.

### A. Testimony Regarding March 9, 2012 Incident

Plaintiff called Nadine Riley, a neighbor, on the morning of March 9, 2012 to ask for a ride to her daughter's school to drop off lunch. (Doc. 55 at 70-72; Doc. No. 56-1 at ¶ 3). Ms. Riley arrived at Plaintiff's residence and observed that Plaintiff stumbled as she walked and had cash wadded up in her hand. (Doc. 56-1 at ¶¶ 4-5). Ms. Riley testified that Plaintiff smelled of alcohol and began petting her hand while in the vehicle. (*Id.* at ¶ 5). Ms. Riley drove Plaintiff to the school, and upon Plaintiff's request, Ms. Riley took the money into the school for Plaintiff's daughter. (Doc. 56-1 at ¶ 6-8; Doc. 55 at 72). Ms. Riley testified that out of concern for the safety of Plaintiff's two daughters, she communicated to a school official that Plaintiff appeared to be intoxicated and offered to pick the girls up after school. (Doc. 56-1 at ¶ 10). These observations and the concerns she expressed ultimately led the principal to speak with Plaintiff's daughter, Jasmine,[1] and notify the Hamilton County Department of Job and Family Services of the situation, precipitating the call to the Wyoming Police Department that caused Sergeant World and Officer Krummen to respond to Plaintiff's residence that day. (Doc. 49 at 21-22; Doc. 51 at 27-28; Doc. 56-3 at ¶ 4).

Plaintiff, who denies being intoxicated but admitted to "not feeling well that day," was cooking dinner with her friend Renee Littles and waiting for Tiffany and Jasmine to

---

[1] The principal asked if Plaintiff had a drinking problem, and Jasmine responded that she did. (Doc. 49 at 21-22).

2

come home from school. *Smith*, 821 F.3d at 710. At roughly 3:20 pm., Sergeant World and Officer Krummen knocked on the door. *Id.* Littles opened the door and told them that Plaintiff was unavailable to speak with them. *Id.* The officers persisted even after Plaintiff called out from the kitchen to say that she was unavailable. *Id.* Within a few minutes, the officers stepped inside the house to find Plaintiff. *Id.* Whether the officers had consent to enter the home is a disputed issue of fact. The encounter ended with the police arranging for the children to spend that night with their father, Joseph Johnston. (Doc. 55 at 92; Doc. 51 at 33-34).

For purposes of deciding the motion for summary judgment and construing all facts in the light most favorable to the nonmovant, the Court of Appeals found that the officers only knew that Plaintiff was possibly intoxicated and unable to care for her children earlier in the day. *Smith*, 821 F.3d at 711. The officers did not arrive at Plaintiff's house until two hours after they were notified of the threat of possible neglect, so it does not appear that they treated the situation as an emergency. *Id.* Nor does the record show that the officers believed that Tiffany and Jasmine were at home and potentially in danger. *Id.* Accordingly, "[g]iving Smith the benefit of all reasonably inferences, the evidence shows that the police perceived their task to be a routine check on Smith to ensure the welfare of her children." *Id.*

### B. Testimony Regarding the April 2, 2013 Incident

Around mid-day on April 2, 2013, Johnston called 911 after Tiffany (then 10 years old) told him on the telephone that a man whom she did not know was in Plaintiff's house and that his presence was making her uncomfortable. *Smith*, 821 F.3d at 704. Mr.

Johnston reported to the 911 operator that Plaintiff had a very serious drinking problem, that she was very drunk, and that an unknown male was "acting real strange around" Tiffany. (Doc. No. 56-2 at Page ID # 655-657). He also stated that "last time this happened, [Plaintiff] got real belligerent and . . . Wyoming Police [had to] remove the kids" from Plaintiff's supervision. (*Id.*)

Sergeant World and Officer Murphy were dispatched to Plaintiff's home. *Smith*, 821 F.3d at 704. Tiffany opened the door and the officers entered, although the parties dispute whether Tiffany consented to their entrance. *Id.* Tiffany informed them that her mother and the unknown man were in an upstairs bedroom. *Id.* The officers went upstairs and knocked on the bedroom door and Plaintiff opened it and the officers asked her to step out of the room so they could identify the man inside. *Id.* The parties have a different account of what happened next. *Id.* Plaintiff claims that she and the man (Chinn) immediately stepped outside of the room. *Id.* The officers claim the two were visibly drunk and Plaintiff did not comply with the officers' repeated requests to leave the bedroom. *Id.* at 704-05. Sergeant World arrested Plaintiff for obstructing official business. *Id.* at 705. Chinn showed his identification to the officers and was allowed to leave. *Id.* The criminal charge against Plaintiff was ultimately dropped. *Id.*

## II.  STANDARD OF REVIEW

"A ruling on a motion *in limine* is no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the district court." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994). Generally, "[m]otions *in limine* are … used to … eliminat[e] evidence that is clearly inadmissible for any purpose." *Indiana Ins. Co.*

4

*v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)). Because *in limine* rulings are advisory in nature, a court may alter its ruling during the course of the trial. *Luce v. United States*, 469 U.S. 38, 41-42 (1984). "Courts are generally reluctant to grant broad exclusions of evidence *in limine* because a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Ohio Willow Wood Co. v. ALPS South, LLC*, No. 2:04cv1223, 2014 U.S. Dist. LEXIS 103107, at *5 (S.D. Ohio July 29, 2014).

Similar to other evidentiary rulings, the decision to grant or deny a motion *in limine* is within the sound discretion of the trial court. *Otto v. Variable Annuity Life Ins. Co.*, 134 F.3d 841, 852 (7th Cir. 1998). However, "[o]rders *in limine* which exclude broad categories of evidence should rarely be employed." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). Rather, motions *in limine* are "generally confined to very specific evidentiary issues of an extremely prejudicial nature." *Brown v. Oakland Cnty.*, No. 14-CV-13159, 2015 WL 5317194, at *2 (E.D. Mich. Sept. 10, 2015). If the evidence is not plainly inadmissible on all potential grounds, the Court's "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Indiana Ins. Co.*, 326 Supp. 2d at 846.

### III. ANALYSIS

Evidence is relevant if it has the "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Civ. P. 401. Under Rule 401, the standard for relevancy is "extremely liberal." *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009).

Additionally, Rule 403 states that although relevant, evidence may be excluded "if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." To exclude evidence under Rule 403, it must be more than damaging to the adverse party; it must be unfairly prejudicial. *United States v. Rey*, 923 F.2d 1217, 1222 (6th Cir. 1982). This Court has broad discretion to decide Rule 403 issues. *United States v. Vance*, 871 F.2d 572, 576 (6th Cir. 1989).

#### A. March 9, 2012 Incident

Plaintiff argues that because the Sixth Circuit rejected Defendants' argument regarding exigent circumstances during the March 9 incident, Defendants should be prevented from presenting evidence at trial of any facts outside of the conversation that took place between the responding officers and Renee Littles regarding consent to the officers' entry into Plaintiff's residence.

With regard to exigent circumstances, the Sixth Circuit held, in ruling on the parties' summary judgment motions, that "on the facts developed thus far," viewed in a light most favorable to Plaintiff, there were not exigent circumstances to enter the home. *Smith*, 821 F.3d at 711. The question of exigent circumstances is now one for the jury,

and the jury must be presented with the relevant evidence surrounding the officers' entry into Plaintiff's home on March 9, 2012, including the facts of the situation within the officers' knowledge.

Specifically, the question of consent to the officers' entry requires consideration of the "totality of all the circumstances." *Smith*, 821 F.3d at 710 .  Thus, the facts giving rise to the 911 call on March 9 are relevant to the extent the officers were aware of such facts, as they establish the context in which the officers responded to Plaintiff's residence in the first place.  Accordingly, the testimony of Nadine Riley and Jasmine is relevant if the officers were aware of their allegations when they arrived at Plaintiff's house on March 9.

Additionally, Plaintiff's alcohol consumption is also probative of her behavior on March 9, and is therefore relevant.  *Bell v. City of Miamisbug*, Case No. C-3-90-258, 1992 U.S. Dist. LEXIS 22764, at *67 (S.D. Ohio Jan. 17, 1992) (evidence to alcohol consumption on the day of an encounter with police is probative evidence of an individual's behavior during the encounter).  Accordingly, the testimony of Nadine Riley (that Plaintiff had been drinking the morning of March 9) is relevant.  Jasmine's conversation with her principal, that her mother had an alcohol problem, is likely more prejudicial than probative with respect to the March 9 incident, unless Jasmine intends to testify that she observed her mother drinking that day or her conversation with the principal was relayed to the officers.  Additionally, the testimony of Joseph Johnston, who arrived at the scene after the officers entered Plaintiffs' home, is only relevant to the extent that he testifies about Plaintiff's behavior that day.

7

### B. April 2, 2013 Incident

An essential element of a Section 1983 claim alleging deprivation of constitutional rights under color of law is that probable cause did not exist at the time the claimant was subjected to the unconstitutional deprivation. *Garner v. Grant*, 328 F. App'x 325, 327 (6th Cir. 2009). Probable cause has been defined as the "facts and circumstances within [an] officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing that [a] suspect has committed, is committing, or is about to commit an offense." *Mechler v. Hodges*, No. 1-02-948, 2006 U.S. Dist. LEXIS 76550, at *15 (S.D. Ohio Oct. 11, 2006). The definition implies that where there are facts and circumstances within an officer's knowledge that would lead a reasonable person to conclude that a person has committed a crime, those facts would tend to support probable cause, or at the very least, sway the probable cause calculus in favor of the officer. *Sutkiewicz v. Monroe Cty. Sheriff*, 110 F.3d 352, 358 (6th Cir. 1997). Additionally, evidence of an officer's previous encounters with an individual is particularly probative when evaluating the officer's conduct when interacting with the same individual during subsequent encounters. *Watson v. Dyersburg City Police Dep't.*, No. 08cv2718, 2013 U.S. Dist. LEXIS 134754, at *83 (W.D. Tenn. Sept. 20, 2013).[2]

The crime of obstructing official business contains five elements: (1) an act by the defendant; (2) done with the purpose to prevent, obstruct, or delay a public official;

---

[2] *See also Hubbard v. Gross*, 179 F. App'x 327, 338 (6th Cir. 2006) (admitting evidence of a suspect's history with police in evaluating reasonableness of police action).

8

(3) that actually hampers or impedes a public official; (4) while the official is acting in performance of a lawful duty; and (5) the defendant so acts without privilege. Ohio Rev. Code § 2921.31. The proper focus in a prosecution for obstructing official business is on the defendant's conduct, verbal or physical, and its effect on the public official's ability to perform the official's lawful duties. *State v. Wellman*, 879 N.E.2d 215, 218 (Ohio App. 2007).

    Here, the essential issue pertaining to Plaintiff's unlawful arrest claim is whether Sergeant World had probable cause to believe that Plaintiff was obstructing official business. The facts known to the officers, and the context in which the visit was made, are relevant because they make the existence of a "fact that is of consequence to the determination of the action," *i.e.*, the existence of probable cause at the time of arrest, more probable.

    Accordingly, to the extent Joseph Johnston's 911 testimony was relayed to the officers, it is relevant. Additionally, to the extent Johnston shared Plaintiff's history of alcohol abuse with Sergeant World at the March 9 incident, it is relevant to the April 2 encounter. Specifically, the contested evidence of context is directly relevant to Sergeant World's probable cause determination. Tiffany Johnston's fear attributable to the presence of an unknown male alone with Plaintiff in her bedroom is only relevant to the extent such fear was communicated with the officers before Plaintiff's arrest. However, Tiffany can testify to the events that took place while the officers were present in Plaintiff's residence.

## IV. CONCLUSION

Accordingly, for these reasons, Plaintiff's motion *in limine* (Doc. 99) is **GRANTED IN PART** and **DENIED IN PART** as explained in this Order.

**IT IS SO ORDERED**.

Date: 8/22/16                                                    *s/ Timothy S. Black*
                                                                                                     Timothy S. Black
                                                                                                 United States District Judge